A94A2652. BYRD v. THE STATE.
(454 SE2d 594)

BEASLEY, Chief Judge.

Byrd asserts the evidence was insufficient to support the conviction, after being sentenced on one count of an indictment charging five counts of giving a false statement to a police officer. OCGA § 16-10-20.

In the early morning hours of February 24, 1993, Byrd appeared at a fire station with a gunshot wound in the abdomen. When separate officers investigating the incident asked Byrd the next day who had shot him he twice stated he did not know. Counts one and two of the indictment, of which he was acquitted, were based upon these two statements.

On March 2, 1993, Byrd told police officers that he had been shot by a woman named Adams, and he signed a written statement to that effect. Counts three and four were based upon these statements. The jury found him guilty, but the court directed verdicts for Byrd after it determined that he had been placed in custody at the time the statements were made without having been advised of his rights.

On March 25, 1993, he recanted his accusation of Adams and stated that he had been shot by a man named "Greg"; this statement was the basis of Count five, upon which judgment and sentence were entered. It does not appear from the record that anyone was ever charged with shooting Byrd.

On appeal, the evidence is viewed in the light most favorable to support the verdict. *Key v. State*, 213 Ga. App. 556, 557 (445 SE2d 349) (1994). As the jury found Byrd not guilty on the two counts based upon his statements that he did not know who shot him, and found him guilty on the counts based upon statements that accused specific persons, it appears the jury believed Byrd's earlier statement that he did not know who shot him. He repeated it at trial and the jury logically concluded that his other statements were falsely made.

Two investigating officers testified that in his last statement Byrd admitted his accusation of Adams was false and he related a version of the shooting involving a man named "Greg." Byrd told the officers that he and "Greg" were in a bar and became belligerent towards one another. Rather than engage in a fight at the bar they separately drove to a vacant lot. There "Greg" lunged at Byrd and shot him. "Greg" was Greg Freeney.

Byrd contends that the officers' testimony only indicates that he made an implication, conclusion, or supposition that Greg Freeney shot him, not a declaration that such was the case. One officer related Byrd's statement as "Greg lunged at [Byrd] and [Byrd] guessed that's when he shot [Byrd]." The other officer related the statement as "[h]e said that Greg came toward him and lunged toward him and that's when evidently he was shot. He become (sic) unconscious and when he woke up later he was by himself." This second officer, who asked some questions of Byrd after the first officer left, also testified that Byrd answered "yes" to the specific question "did Greg shoot you?"

Byrd testified that his March 25 statement to the officers was that he could not remember exactly how he was shot but that he *could* have been shot by Greg Freeney in the manner described, and that he only responded "yes" to the specific question "did Greg shoot you" because that seemed a logical possibility. He also testified that he did not know who shot him and never told anyone that he did know. He admitted he consumed a large amount of alcohol, as well as some Valium, during the course of the day and evening before the shooting. Byrd's testimony created a conflict in the evidence and a question of credibility to be resolved by the jury. *Cantrell v. State*, 210 Ga. App. 218, 219-220 (1) (435 SE2d 737) (1993). There was sufficient evidence that Byrd stated to police that he had been shot by Greg Freeney.

There was also evidence from which the jury could conclude that the statement was false. Freeney testified that he did not shoot Byrd and that he was with his girl friend from the evening of February 23 through the morning of the 24th. His girl friend testified to the same effect and noted that February 23 was her birthday.

Byrd also contends there was insufficient evidence that his accu-

sation of Greg Freeney was "knowingly and willfully" made, as required by OCGA § 16-10-20. He argues that he was coerced to make the March 25 statement by a police officer's threat to reveal to his girl friend the earlier version of events involving the woman named Adams. Any fear on Byrd's part was prompted by his knowledge that the statement was false and that its falsity would not be known by his girl friend, who would react unfavorably to him upon the mistaken belief it was true. This was self-induced, not police-induced. See *Ramos v. State*, 198 Ga. App. 65, 66 (1) (400 SE2d 353) (1990), which analyzes the character of the statement's prompting in the context of admissibility under OCGA § 24-3-50.

The proper question is whether the jury could have inferred the elements of the crime from the evidence presented. See *Dalton v. State*, 251 Ga. 641, 642 (3) (308 SE2d 835) (1983). "Knowingly," as used in OCGA § 16-10-20, includes knowledge of the falsity of the statement. *Tidwell v. State*, 216 Ga. App. 8 (453 SE2d 64) (1994). There was evidence from which the jury could conclude Byrd knew Greg Freeney had not shot him. Additionally, Byrd's argument is not that he did not know the statement was false, but that he did not make anything that could be termed a statement.

*Tidwell*, supra, did not specifically address the statutory element of "willfully." In the context of the statute concerning securities crimes, OCGA § 10-5-24, we have upheld a jury instruction that "willful means knowingly and intentionally committing the acts that constituted the violation." *Greenhill v. State*, 199 Ga. App. 218, 220 (3) (404 SE2d 577) (1991). Willful means intentional, deliberate, self-determined. Webster's Third New Intl. Dictionary. Even if Byrd was pressured into attending the March 25 interview, the evidence supports the conclusion that his false accusation of Greg Freeney was the result of his own voluntary intent. The jury evaluates the credibility of the witnesses. *Cantrell*, supra. Obviously, the jury chose not to believe Byrd's allegation that he made the accusation against Greg Freeney unknowingly or against his will. See *Cason v. State*, 197 Ga. App. 308 (398 SE2d 292) (1990).

Although the statement's admissibility is not before us, we note that there does not appear to be any violation of Byrd's due process rights: "The circumstances of the investigation and arrest in this case reveal none of the extreme tactics identified as the hallmarks of coercive police activity offensive to fundamental notions of due process. [Cit.] There was no lengthy interrogation, threats of physical violence, promises or other deliberate tactics calculated to break the will of the suspect." *Metheny v. State*, 197 Ga. App. 882, 886 (1) (c) (400 SE2d 25) (1990).

The evidence on the specific charge for which Byrd was convicted and sentenced was sufficient to support that conviction. *Jackson v.*

*Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Jacobs v. State,* 207 Ga. App. 714, 716 (3) (429 SE2d 256) (1993).

*Judgment affirmed. Andrews and Johnson, JJ., concur.*

DECIDED FEBRUARY 15, 1995.

*L. Elizabeth Lane,* for appellant.

*Charles H. Weston, District Attorney, Laura D. Hogue, Assistant District Attorney,* for appellee.