## A02A1526. WILSON v. THE STATE.
### (570 SE2d 679)

BARNES, Judge.

Rebecca Denise Wilson was charged with two counts of cruelty to children, one for causing pain to her three-month-old child, M. W., from a severe diaper rash, and one for wilfully depriving M. W. of necessary sustenance to the extent that the child's well-being was jeopardized. A jury acquitted her of the first count and convicted her of the second. The trial court sentenced Wilson to serve 11 years, and she appeals, contending that the court erred (1) in denying her motion for directed verdict; (2) in refusing to give her requests to charge on bare suspicion, raising a child in unsanitary conditions, knowledge, and accident; (3) in charging the jury on prior difficulties between the defendant and victim; and (4) in sentencing her to serve 11 years. For the reasons that follow, we affirm.

1. We view the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997).

Viewed in the light most favorable to the verdict, the evidence at trial established that two uniformed police officers responded to a phone call asking them to check on the welfare of the caller's nephew, who had threatened to commit suicide. The officers went to the address the caller gave, which was the trailer where defendant and her four children lived, and spoke to the nephew out on the porch. While they were outside, a small child came to the door with a very dirty face in a diaper hanging three or four inches from the ground. When the child opened the trailer door, the officers saw that the residence was "completely filthy, dirty, with several other children inside." The floor was strewn with clothes, dirt, and broken glass, and

the four children inside were barefoot. The children, three of whom were the defendant's, were ages six, five, three, and two, and two adults were present in addition to the nephew, none of them being the defendant. The officers made a "property check" of the house to ensure the children's welfare and then called a county photographer to document the scene.

Officer Patterson testified that the kitchen counter was filled with dirty dishes and broken glass that had fallen to the floor, and the refrigerator, which had a "horrible smell," contained no food for the babies, just milk, mayonnaise, syrup, ketchup, and a bottle of MD20/20. The children's beds had no sheets, and the bathroom was very dirty. The first bedroom they inspected had clothes strewn all over, dirty dishes, and two or three full ashtrays. They saw a blanket move and discovered a fifth child, three-month-old M. W., in a bassinet. The infant had a rash from above his waist to the bottom of his knees, which was not a normal diaper rash.

Officer Roberts testified that when he and his partner entered the trailer, he smelled a "foul odor" in the kitchen coming from a baby diaper in a dustpan on the table. He did not see the infant at first, who was very small, and could not open a second bedroom door all the way because it was blocked by a mattress and clothing.

The emergency room pediatrician testified that she examined M. W. at the hospital that evening. He appeared severely malnourished, weighing less than eight pounds, which is the weight of a normal two-week-old. His extremities were thin, his skin was very dry and cracked, especially around his mouth and ears, and his scalp was severely dry and flaky, all of which were suggestive of malnutrition. He was not following things properly with his eyes, and his nose was crusty and full of mucus. He had a very severe diaper rash, which was very red and inflamed, and a very weak cry. After blood tests, the doctor diagnosed anemia, low protein level, failure to thrive, malnutrition, severe diaper rash, and cradle cap, and referred him to admissions so he could be stabilized and given nourishment.

The pediatrician who subsequently treated M. W. in the hospital testified that he was underweight. Born five pounds six ounces, he should weigh ten pounds at three months, but weighed only seven pounds twelve ounces and appeared malnourished and weak. He had a rash on his scalp, right earlobe, and eyelids, which can be caused by poor hygiene. M. W.'s diaper area was swollen, red, and a bit raw, with satellite lesions indicating he had a fungal infection in addition to irritation. The doctor testified that this condition did not develop over two hours or two days, but probably over at least a week. Further, the child was initially too weak to suck and had to be fed through a naso-gastric tube inserted into his stomach, but regained his ability to feed himself within a day.

An investigator with the Child Protective Services division of the Department of Family & Children Services testified that the police called him when they took M. W. to the hospital because he had a prior history with the child.

Finally, an acquaintance of Wilson's testified that she had gone to Wilson's home almost daily in the two weeks before the police came and had seen Wilson feed her baby sugar water because she did not feel like "fooling with" the baby's formula. Sometimes Wilson would feed the child and sometimes she would just prop up the bottle and leave it. The witness testified that she would frequently fix M. W.'s formula and feed the baby herself.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Wilson guilty beyond a reasonable doubt of cruelty to children by wilfully depriving M. W. of necessary sustenance to the extent that the child's well-being was jeopardized. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Wilson contends the trial court erred in refusing to give her requests to charge on bare suspicion, raising a child in unsanitary conditions, knowledge, and accident. `

(a) Because the trial court gave complete instructions on reasonable doubt and the presumption of innocence, the court did not err in refusing to give Wilson's requested charge on bare suspicion. *Jackson v. State*, 247 Ga. App. 273, 276 (2) (543 SE2d 770) (2000).

(b) While the State may not prove the element of malice in a cruelty to children case by establishing only that the defendant had an unsanitary house, *Brewton v. State*, 266 Ga. 160, 162 (2) (465 SE2d 668) (1996), the State was not seeking to prove malice only by showing Wilson's poor housekeeping. Rather, the State introduced evidence of the home's condition to show that Wilson maliciously intended to cause M. W. cruel and excessive physical pain by failing to treat his diaper rash and wilfully depriving him of necessary sustenance. Wilson was permitted to argue to the jury that she could not be found guilty just because she had a dirty house, and the trial court did not err in refusing to give the requested charge.

(c) The trial court did not err in giving the pattern charge on knowledge rather than Wilson's requested charge on knowledge.

(d) The trial court did not err in failing to charge the jury on accident. While a defendant is entitled to an unrequested charge on her sole defense, accident was not Wilson's sole defense in this case; rather, her defense was that she did not know anything was wrong with her son. See *Austin v. State*, 246 Ga. App. 610, 613-614 (2) (540 SE2d 710) (2000).

3. Wilson asserts that the trial court erred in charging the jury on prior difficulties between her and her son. The State argues that evidence Wilson had given M. W. sugar water because it was easier

than preparing his formula is evidence of a prior difficulty between them that justifies the charge. We disagree. Feeding her baby sugar water is part of the continuing act of cruelty for which Wilson was convicted, not evidence of "difficulties" between the infant and its mother. While we hold that giving this charge was error, the error was harmless due to the overwhelming evidence against Wilson that supports her conviction. See *Newman v. State*, 259 Ga. 506, 507 (1) (384 SE2d 670) (1989).

4. Finally, Wilson contends the trial court's sentence of 11 years to serve[1] is cruel and unusual because it is "grossly out of proportion to the severity of the crime," citing *Fleming v. Zant*, 259 Ga. 687, 689-690 (3) (386 SE2d 339) (1989). Wilson also cites *Haygood v. State*, 225 Ga. App. 81, 83 (2) (483 SE2d 302) (1997), for the proposition that this sentence is too harsh. In *Haygood*, the defendant was convicted of criminal trespass for trimming her neighbor's hedge and was sentenced to serve 12 months. We vacated the sentence and remanded for resentencing because the trial court initially offered the defendant, who was pro se, either the jail time or a fine and community service, then sentenced her to serve time while she was considering the matter. The disparity in these two options was drastic, and we held that "imposing on [the defendant] the maximum misdemeanor punishment would be viewed by society as 'cruel and unusual' in the constitutional sense of disproportionality." Id. at 84.

The case before us is quite different in terms of severity and proportionality. Wilson was not convicted because she trimmed her neighbor's bushes, but because she withheld sustenance from her baby to the extent that his well-being was jeopardized. The child had to be admitted to the hospital to be stabilized and had to be fed through a tube until he gained enough strength to eat on his own. Both the emergency room and treating pediatricians testified that the child was severely malnourished, based not only on his low weight, but also on his extremely dry, loose, flaky skin. A witness testified that Wilson said she could not be bothered with preparing the baby's formula and fed him sugar water instead.

The legislature has authorized a sentence of five to twenty years for a conviction of first degree cruelty to children. OCGA § 16-5-70 (d). We will not review for legal error a sentence that is within the statutory limit. *Daniels v. State*, 154 Ga. App. 323, 325 (3) (268 SE2d 376) (1980); *Garrett v. State*, 147 Ga. App. 500, 501 (3) (249 SE2d 315) (1978).

---

[1] Wilson also contends the sentence should be reversed because it cannot be reviewed by the Sentence Review Panel under OCGA § 17-10-6. Sentence review under that statute is "a matter of legislative grace," *Reed v. State*, 251 Ga. App. 606, 607 (554 SE2d 792) (2001), and we must abide by the legislature's decision that sentences of less than 12 years are not subject to such review.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 30, 2002.

*Robert H. Suttles*, for appellant.
*Robert E. Keller, District Attorney, Lalaine A. Briones, Assistant District Attorney*, for appellee.