A03A0800. WILLIAMS v. THE STATE.
(582 SE2d 556)

BARNES, Judge.

Johnny B. Williams appeals his convictions of cruelty to a child, tampering with evidence, and making false statements in matters within the jurisdiction of the Savannah Police Department, enumerating six errors. He challenges the sufficiency of the evidence regarding the convictions for tampering and false statements, and further asserts the trial court erred in: allowing the State to introduce similar transaction evidence; sentencing him to cruel and unusual punishment; allowing the State to introduce evidence of his custodial statement; admitting evidence of a police report concerning a similar transaction; and finding his trial attorney was not ineffective. For the reasons that follow, we affirm the trial court's judgment of convictions and sentence.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only

---

determine if the evidence is sufficient to sustain the convictions. *Taylor v. State*, 226 Ga. App. 254, 255 (485 SE2d 830) (1997).

Viewed in that light, the evidence at trial established that Williams, who had a relationship with the victim's mother, came to the 16-year-old victim's house one morning, got into an argument with her and brandished a gun, saying he should do what he came there to do and he would be back. He left and returned that evening, kicking the door and yelling, "Bitches, you all come out here and talk about what happened this morning." He broke the glass in the window beside the door, and then turned and saw the victim, L. P., who was walking toward the house from a neighbor's house. He chased L. P. to a nearby field, knocked her down, and began hitting her and trying to stab her with a box cutter. L. P. weighed 98 pounds to Williams' 175 pounds. She managed to wrestle the box cutter from him, stabbed him in the shoulder with it, and ran away.

L. P.'s mother, who weighed about "90-something" pounds at the time, came around the corner with a 9 mm handgun and fired at Williams, striking him a glancing blow on his shoulder. He ran at her, and the two began wrestling over the gun, pointing it first up in the air and then back down, until finally it was aimed at L. P. The gun discharged, and L. P. was shot in the lower abdomen.

Williams took the gun and began running away. A Savannah Police Department patrol officer, responding to a call about the shooting, arrived just as Williams began running and chased him until Williams stopped at a fence he was unable to scale. The officer subdued Williams with help from two backup officers, and then called for an ambulance because Williams was bleeding from his shoulder. After the ambulance arrived, the officer began looking for the gun, which he located in a crawl space under a house where he had lost sight of Williams during the chase.

The jury acquitted Williams of attempted burglary, aggravated assault, and possession of a firearm, convicted him of cruelty to a child, tampering with the evidence by concealing the gun, and making false statements to the police, and could not reach a verdict on the charge of resisting arrest. After a second trial immediately following the first, the jury acquitted Williams of possession of a firearm by a convicted felon.

1. Williams contends that insufficient evidence supports his conviction of tampering with evidence. The indictment charged that he acted "with the intent to obstruct his own prosecution" by knowingly concealing a certain 9 mm pistol, "physical evidence concerning criminal charges against him," in violation of OCGA § 16-10-94. That Code section provides:

> A person commits the offense of tampering with evidence when, with the intent to prevent the apprehension or cause

the wrongful apprehension of any person or to obstruct the prosecution or defense of any person, he knowingly destroys, alters, conceals, or disguises physical evidence or makes, devises, prepares, or plants false evidence.

Williams argues that his concealment of the pistol was not unlawful because the jury found he was not guilty of the firearm offenses. As the State points out, however, the question of whether he legally possessed the gun or used it to shoot L. P. is independent of whether the gun was evidence that he intended to conceal to obstruct his prosecution. Several witnesses testified he fled the scene with the gun in his hand, the arresting officer testified he did not have the gun on him when he was arrested, and the officer backtracked the chase path and found the gun hidden in a crawl space. Further, a Savannah Police Department detective testified that she told Williams while he was in the ambulance that she was concerned that a child might find the gun and she would appreciate him letting her know where it was. Williams responded that someone had taken the gun "back toward the lane" and she should not worry about it.

The verdicts of not guilty for aggravated assault and firearm possession are not mutually exclusive of the verdict of guilty for evidence tampering, as were the verdicts for malice murder and vehicular homicide in *Dumas v. State*, 266 Ga. 797, 799-800 (2) (471 SE2d 508) (1996). "Moreover, the inconsistent verdict rule does not apply in criminal cases in this state." *Williams v. State*, 228 Ga. App. 698, 701 (2) (492 SE2d 708) (1997). "Applying the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), we find a rational trier of fact could have found [Williams] guilty beyond a reasonable doubt of concealing the [handgun] with intent to obstruct the prosecution." *Chastain v. State*, 255 Ga. 723, 725 (4) (342 SE2d 678) (1986).

2. Williams contends that insufficient evidence supports his conviction for making false statements. The indictment accused Williams of making

false statements in matters within [the] jurisdiction of [the] Savannah Police Department [in that he did] knowingly and willfully make a false statement to Detective Dionne Thompson, conducting an official investigation for the Savannah Police Department by falsely stating that he was shot by Pearly Mae Benton after [L. P.] was shot and by falsely denying that he was in possession of a certain pistol at the time [L. P.] was shot. . . .

OCGA § 16-10-20 provides:

> A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter within the jurisdiction of any department or agency of state government or of the government of any county, city, or other political subdivision of this state shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

In this case, Williams agreed to speak with Detective Thompson after his first arraignment, and seemed "real comfortable about explaining his side of the story." He told her that L. P. got mad at him because he had been teasing her and stabbed him in the shoulder with a box cutter. She ran for the house calling for her mother, who came out shooting and hit L. P. Then she shot Williams, who took the gun from her and ran away. Williams admitted on the stand that he lied when he told the detective that L. P.'s mother shot L. P. first, and then shot him. Williams asserts that his acquittals for aggravated assault and firearm possession and his conviction for giving a false statement are mutually exclusive, but does not explain how they are exclusive. In fact, they involve the completely different issues of, on the one hand, whether Williams shot L. P. while he and L. P.'s mother struggled over the gun and, on the other hand, whether he told the officer that L. P.'s mother shot L. P. before shooting him. Again applying the standard of *Jackson v. Virginia*, supra, 443 U. S. at 307, we find a rational trier of fact could have found Williams guilty beyond a reasonable doubt of making false statements. *Byrd v. State*, 216 Ga. App. 316 (454 SE2d 594) (1995).

3. Williams contends the trial court erred in allowing the State to present evidence of prior bad acts that were too remote and "patently dissimilar." In one incident that occurred in June 1997, less than a year before the fight that led to this trial, Williams was accused of threatening to stab L. P.'s mother and was escorted from her house by police. In the other similar transaction that occurred in March 1997, the State presented evidence that Williams stabbed L. P.'s mother nine times in the arm and back while they were drinking at L. P.'s mother's house, although he was never prosecuted for the assault.

"Evidence of prior difficulties between an accused and a victim is admissible to illustrate the accused's motive, intent, or bent of mind

toward the victim." *Height v. State*, 214 Ga. App. 570, 573 (5) (448 SE2d 726) (1994). The prior difficulties here both took place within 14 months of the occurrence giving rise to the present charges. Both involved either a threat or an assault with a knife committed by Williams upon L. P.'s mother. These transactions were sufficiently similar to the crimes charged to warrant their admission under *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991).

4. Williams contends that his sentence is cruel and out of proportion with the crime, thus violating the Eighth Amendment of the United States Constitution and Art. I, Sec. I, Par. XVII of the Georgia Constitution. The trial court sentenced him to serve ten years for cruelty to a child, twelve months for tampering with evidence, and five years for making false statements, all to run concurrently. The trial court commented at sentencing that if Williams had not chased and assaulted the little girl, no one would have been shot or stabbed. The court continued,

> On the other hand, the jury did find him not guilty of the assault and not guilty of the attempted burglary, so I'm faced with three items and I can't punish him for everything under the guise of punishing him for cruelty to a child. It wouldn't be right. I'm considering that one offense and his prior — he does have a prior record.

Williams argues that, despite its pronouncement, the trial court proceeded to sentence him for all the offenses by "sentencing Appellant severely for relatively innocuous conduct" in violation of this state's prohibition against vindictive sentencing. Appellant's conduct was hardly "relatively innocuous." He chased down a girl half his weight, knocked her to the ground, hit her with his fists, and tried to stab her with a box cutter. He could have been sentenced to serve twenty years for this offense under OCGA § 16-5-70, rather than the ten-year sentence he received.

Additionally, "mere rote recitation of constitutional provisions [does] not raise constitutional issues." *Dixon v. State*, 196 Ga. App. 15-16 (1) (395 SE2d 577) (1990). "The legislature has authorized a sentence of five to twenty years for a conviction of first degree cruelty to children. OCGA § 16-5-70 (d). We will not review for legal error a sentence that is within the statutory limit." *Wilson v. State*, 257 Ga. App. 242, 245 (4) (570 SE2d 679) (2002).

5. Williams asserts that the trial court erred in allowing the State to submit evidence of a "demonstrably evasive" statement he gave to Detective Doss, who questioned him in the ambulance without advising him first of his *Miranda* rights because she thought he was the shooting victim, not the suspect. Williams incorrectly con-

tends that this statement served as the basis of the false statements charge of which he was convicted, but that charge was actually based on his conversation with another detective at arraignment in which he lied about the shooting sequence, addressed earlier in Division 2 of this opinion.

The trial court held a *Jackson-Denno* hearing to determine the voluntariness of Williams' statement to Detective Doss, who testified that she had just arrived at the scene, responding to a call that someone had been shot, and saw Williams, who had been shot, receiving treatment. She identified herself to Williams in the ambulance as a police detective and asked if he wanted to tell her what happened. He smiled and said he did not want to get anyone in trouble. After another officer pulled the detective aside and told her a third officer had chased Williams, whose gun was missing, the detective asked Williams about the gun's location because she was concerned it might be accessible to the neighborhood children. Williams replied that someone had taken the gun "back toward the lane" and it was taken care of. The detective testified that she thought Williams realized she did not know he was a suspect, that he was not handcuffed or threatened but in fact was laughing, and that the conversation lasted less than five minutes. The trial court found credible the detective's testimony that she did not know Williams was a suspect and denied Williams' motion to suppress, finding that he made the statements freely and voluntarily.

We accept a trial court's credibility determinations unless they are shown to be clearly erroneous. Williams has made no such showing, and therefore we conclude that the trial court did not err in holding that Williams gave the statement freely and voluntarily. *Hammond v. State*, 273 Ga. 442, 447 (4) (542 SE2d 498) (2001). Further, the State is permitted to impeach a defendant's trial testimony with inconsistencies or omissions in his pre-trial statement, and in this case the State properly introduced evidence of Williams' statement to Detective Doss in rebuttal after Williams testified at trial that he had cooperated with the police. *Pye v. State*, 269 Ga. 779, 786-787 (14) (505 SE2d 4) (1998). We find no error.

6. Finally, Williams argues that the trial court erred in admitting evidence of a police report regarding one of the similar transactions, and that his counsel was ineffective for failing to object "with sufficient specificity" to its admission. Contrary to Williams' latter argument, his trial counsel objected to the evidence on several specific grounds, including hearsay, and therefore was not ineffective and did not waive his right to argue the issue on appeal.

The report involved the previous stabbing incident about which both L. P. and L. P.'s mother testified. Over the defendant's objection, a detective testified that the incident report reflected that an officer

responded on March 1, 1997, to an aggravated assault call at L. P.'s house. The witness read the narrative report into the record, which stated that the officer found L. P.'s mother with nine stab wounds on her arm and back that were not life-threatening, and that the victim said Williams, who had fled the scene, had committed the assault during an argument.

The Supreme Court of Georgia recently held that "the narratives contained in police reports generated in connection with police investigations are not the appropriate subject of an exception to the hearsay rule," *Brown v. State*, 274 Ga. 31, 33-34 (1) (549 SE2d 107) (2001), adding in dicta that "[c]ertain information, such as the time, date and location of an arrest, may be properly admitted under the business records exception." Id. at 33, n. 2.

The narrative portion of the police report that this officer read into the record was clearly inadmissible hearsay, and its admission into evidence was error. Williams argues that the error was not harmless because it violated the reciprocal discovery statute, was "of constitutional magnitude," and improperly bolstered earlier witness testimony.

(a) Williams makes no argument and cites no authority regarding the discovery issue, other than citing the first part of the discovery statute, OCGA § 17-16-1. When the State's witness began to testify about the police report, Williams objected because he had not been given a copy ten days before trial. The State responded that it was newly discovered evidence, and a detective testified that his earlier attempt to locate the report was unsuccessful because the address had been entered into the database incorrectly. He found the report by searching again the day before using the complainant's name. The trial court found that the report was newly discovered evidence and therefore its late production did not violate the statute's ten-day rule.

OCGA § 17-16-4 (a) (3) directs the prosecuting attorney to provide to the defendant documents within its possession or control intended for use as evidence, at least ten days before trial or as otherwise ordered by the court. If the State fails to comply with the statute, and the defendant makes a showing of bad faith and prejudice, the trial court may prohibit the State from introducing the evidence it improperly withheld from the defense. *Bell v. State*, 224 Ga. App. 191, 192 (480 SE2d 241) (1997). Williams made no such showing, and therefore the trial court did not err in finding that the State did not violate the reciprocal discovery statute.

(b) As stated earlier, merely claiming that an error is of constitutional magnitude that raises "confrontation clause concerns" does not raise a constitutional issue. *Dixon v. State*, supra, 196 Ga. App. at 15-16.

(c) Williams claims that the report improperly bolstered the testimony of the State's witnesses. "The rule . . . that normally a party may not bolster the veracity of its own witness until the witness has been impeached by the adverse party[ ] refers to character evidence intended to show a witness' veracity, that is, his tendency to tell the truth." (Citation, punctuation and emphasis omitted.) *Kimbrough v. State*, 215 Ga. App. 303, 304 (2) (a) (450 SE2d 457) (1994). The improperly admitted narrative portion of the police report, however, did not bolster the testimony of L. P. and her mother about the stabbing incident; the investigating officer nowhere averred that the witnesses were telling the truth about the incident, but merely repeated their statements.

(d) L. P. and her mother testified that Williams stabbed the mother at the mother's house after an argument, and thus the witness statements to that effect contained in the narrative report were merely cumulative. The admission of the detective's testimony was therefore harmless error. *Odom v. State*, 248 Ga. 434, 437 (3) (283 SE2d 885) (1981).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED MAY 27, 2003.

*Thomas J. Gustinella*, for appellant.

*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.