

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,           )
                             )
                  Respondent,)
                             )
vs.                          )          No. SC94210
                             )
PETER D. HANSEN,             )
                             )
                  Appellant. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY
Honorable J. Dan Conklin, Judge

*Opinion issued December 23, 2014*

Peter Hansen was convicted of two counts of felony child abuse pursuant to section 568.060[1] for inflicting "cruel and inhuman punishment" upon his 14-year-old son by confining him in a small bathroom and by restricting food.[2] The court

---

[1] All statutory citations are to RSMo 2000. It should also be noted that the legislature removed the phrase "cruel and inhuman punishment" from the statute in 2012. This amendment does not affect this appeal, however, because the alleged abuse occurred prior to 2012.

[2] The jury acquitted Hansen of three other charges: (1) endangering the welfare of a child by failing to provide his son adequate nutrition and sustenance; (2) endangering the welfare of a child by failing to provide his daughter adequate nutrition and sustenance; and (3) knowingly inflicting cruel and inhuman punishment on his daughter by restricting her food. The jury could not agree on the fourth charge, knowingly inflicting cruel and inhuman punishment on his daughter by placing her in isolation. The circuit court declared a mistrial as to this count.

sentenced Hansen to concurrent terms of three years imprisonment but suspended the execution of the sentence and ordered 100 days of shock incarceration.

Hansen raises two points on appeal. He argues that the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence to establish beyond a reasonable doubt that he knowingly inflicted cruel and inhuman punishment upon his son by restricting his son's food or by confining him in the bathroom. The judgment is affirmed.

**Facts**

In November 2009, Hansen and his family were living at a church in Springfield, Missouri. Police officers and an investigator went to the church to investigate a child abuse hotline call regarding Hansen's son and daughter. When the officers arrived, Hansen's wife indicated that Hansen and their son were not home. The officers found Hansen's son in the bathroom of an adjacent, locked building. One of the officers described the conditions as "worse than what you would typically find in a prison-type environment [because] there was no light and it was extremely cold in the building [Hansen's son] was staying in." The children were taken into protective custody.

Hansen returned home and was questioned. Hansen told the investigators that he disciplined his son and his daughter by confining them in the bathroom and by restricting food.

When Hansen imposed food restrictions, he allowed his son to eat approximately a cup of grain for breakfast and a cup of rice and vegetables for

dinner. The food restriction periods ranged from two days to as long as two weeks. Hansen occasionally withheld dinner, meaning that on those days, his son's entire food ration for the day consisted of a cup of grain for breakfast. On a few occasions, Hansen restricted all food. Hansen instructed his son not to tell anyone about these disciplinary measures.

When Hansen punished his son by confinement, Hansen required his son to stay in a bathroom that measured approximately four feet by five feet. Hansen's son testified that his father confined him in the bathroom "five or six" times and that his most recent period of confinement lasted "one and a half to two weeks." Hansen told investigators that the bathroom was "like a hole for a 14 year old, and I'm okay with that."[3] Hansen testified that the bathroom was too small for his son to lie down in and that he removed the light switch from the bathroom so that his son would not draw attention by turning the lights off and on. While in "the hole," Hansen's son was allowed to have a sleeping bag, a sleeping pad, a Bible, a notebook, eating utensils, and a few clothes. He was required to stay in the bathroom "pretty much all day and night" but was allowed outside for 15 to 30 minutes to play. A police officer testified that the building where the bathroom was located was very cool and that the thermostat "was programmed to cool down to 40 degrees." The boy testified that he felt "worried and angry" when confined in bathroom.

---

[3] Hansen used the term "hole" to refer to solitary confinement cells in prison.

After being taken into protective custody, the children underwent a medical examination. Both children were small for their age. Hansen's son weighed 83 pounds and was just over five feet tall. His height and weight were determined to be at less than the 5th percentile for his age, meaning that at least 95 per cent of boys at the same age would be expected to be taller and heavier. Hansen's son also showed no signs of puberty even though he was 14 years old. A pediatrician who treated both children for almost a year after they were taken into custody determined both children were provided inadequate calories for appropriate weight gain and growth while in Hansen's custody. There was evidence that Hansen's son rapidly gained significant weight and grew several inches after placement in protective custody.

The jury convicted Hansen of child abuse for confining his son in the bathroom and for restricting food. Hansen appeals. Hansen asserts that there was insufficient evidence to support either conviction.

## Standard of Review

An appellate court's review of the sufficiency of the evidence to support a criminal conviction is limited to determining whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). All evidence and inferences favorable to the State are accepted as true, and all evidence and inferences to the contrary are rejected. *State v. Stover*, 388 S.W.3d 138, 146 (Mo. banc 2012).

4

## Section 568.060

Hansen was convicted of child abuse as defined in section 568.060.1(1). The statute provides that "[a] person commits the crime of abuse of a child if he [or she] knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old ...." The term "cruel and inhuman punishment" is not defined by the statute. This Court has, however, stated the phrase has "a settled common-law meaning and are words of general and common usage about which there is no great dispute as to meaning." *State v. Brown*, 660 S.W.2d 694, 698 (Mo. banc 1983). The term "punishment" has been defined as "severe, rough, or disastrous treatment." *State v. Silvey*, 980 S.W.2d 103,108 (Mo. App. 1998).

## Food Restriction

The jury found that Hansen knowingly inflicted cruel and inhuman punishment upon his son by restricting food. Hansen asserts that his acquittal of child endangerment based on the food restriction demonstrates that there was insufficient evidence to convict him of child abuse based on the food restriction. Hansen also argues that there is insufficient evidence to support this conviction because the food restriction amounted to nothing more than depriving his son of "desserts and condiments" while providing the "same healthy vegetarian diet" provided to the rest of the family. Finally, Hansen contrasts this case with several

cases in which child abuse convictions were affirmed on particularly egregious facts.[4]   None of these arguments have merit.

The fact that Hansen was acquitted of child endangerment is not dispositive.  Unlike statutes defining the crime of child endangerment, an individual can commit the crime of child abuse by inflicting cruel and inhuman punishment even if the charged conduct does not cause or create a substantial risk of physical injury.  *State v. Dunson*, 979 S.W.2d 237, 243 (Mo. App. 1998); *State v. Horton*, 325 S.W.3d 474, 480 (Mo. App. 2010).  As such, an individual can inflict cruel and inhuman punishment and commit the crime of child abuse without inflicting physical injury.  The fact that Hansen was acquitted of child endangerment does mean that his convictions for child abuse must be reversed.

Hansen's argument that he simply restricted his son from having desserts and condiments while providing him an otherwise healthy diet is refuted by the record.  The evidence at trial was sufficient for the jury to conclude that Hansen knowingly and repeatedly restricted his son's diet to only two "cups" of food per day for several days in a row.  There was also evidence indicating that on several

_____

[4] Among the cases cited are *State v. Fritsch*, 526 S.E.2d 451 (N.C. 2000) (17-year-old weighed only 18 pounds at time of death, autopsy revealed that death was caused by "starvation malnutrition"); *Wilson v. State*, 570 S.E.2d 679 (Ga. App. 2002) (child severely malnourished, too weak to suck and had to be fed through a nasogastric tube into his stomach, and acquaintance of defendant testified that she had seen defendant feed her baby sugar water because she did not feel like "fooling with" the baby's formula); *Buffington v. State*, 824 So.2d 576 (Miss. 2002) (child's hair was falling out in patches due to malnourishment); *State v. Jackson* 419 So.2d 837 (La. 1982) (child had a markedly decreased subcutaneous fat content, a distended abdomen, as well as a marked non-responsiveness all of which indicated malnourishment for a period of some time).

occasions, Hansen limited his son to one cup of food per day or no food at all. Hansen did more than simply withhold dessert.

Even though the food restriction punishment caused no localized or specific physical injury, the food restrictions were not without consequence. There was evidence in this case that Hansen's son was malnourished and that his growth and development were negatively impacted. A pediatrician who treated Hansen's son testified that the boy's weight increased from 83 pounds to 96 pounds within 25 days of being removed from Hansen's care. From November 2009 to July 2010, Hansen's son weight increased to 130 pounds. The pediatrician testified that the boy's growth pattern indicated that he had been receiving inadequate calories for appropriate weight gain and growth. Contrary to Hansen's assertion, this is not a case about sending a child to bed without dessert. Instead, this is a case about placing a child in solitary confinement while knowingly withholding food to an extent that the child's growth and development is demonstrably impaired.[5]

Finally, Hansen's comparison of the facts of this case to more egregious examples of child abuse by food restriction does not demonstrate that there is insufficient evidence to support his conviction. One can abuse a child without nearly killing the child. Further, as the State notes, the law does not permit the withholding of food as punishment even to adults convicted of serious crimes. For example, the federal courts have held that it is unconstitutional to withhold

---

[5] There was evidence Hansen and his family's dietary choices reflected their religious beliefs. Hansen does not argue on appeal that the food restriction punishment is protected by the First Amendment.

7

adequate food from prison inmates.  *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (Eighth Amendment requires that "prison officials must ensure that inmates receive adequate food …."").  If the Eighth Amendment bans the cruel and unusual punishment of depriving inmates of adequate food, surely it is child abuse under section 568.060 to knowingly deprive a child of adequate food.  This Court holds that there was sufficient evidence to support Hansen's conviction for child abuse based on food restriction.

### Confinement

In his second point, Hansen asserts there was insufficient evidence to convict him of knowingly inflicting cruel and inhuman punishment by confining his son in the bathroom.  The evidence showed that Hansen repeatedly confined his son to the bathroom for days at a time and he was not allowed to have the light on unless he was doing school work.  He was only permitted to leave the bathroom for 15 to 30 minutes of exercise per day.  One of the officers present when the children were taken into protective custody stated the conditions were "worse than what you would typically find in a prison-type environment[.]"  Additionally, there was evidence showing that the bathroom was too small for Hansen's son to lie down and that Hansen intentionally kept the room cold.  Despite the cold, Hansen's son was confined to the bathroom wearing only a long-sleeved T-shirt and thin flannel pants.  When authorities arrived to investigate, the temperature in the building was 58 degrees.  There was sufficient evidence to support a finding

that Hansen subjected his son to cruel and inhuman punishment by repeatedly placing him in solitary confinement in the bathroom for days at a time.

The judgment is affirmed.


_____
RICHARD B. TEITELMAN, Judge

All concur.