

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI,     )
    )
         Respondent,     )
    )
    vs.     )     No. SD33425
    )     Filed: September 29, 2015
MAX GIBSON,     )
    )
         Appellant.     )

### APPEAL FROM THE CIRCUIT COURT OF POLK COUNTY

Honorable Michael O. Hendrickson, Circuit Judge

## AFFIRMED

Max Gibson ("Gibson ") appeals his conviction for two counts of the class C felony of abuse of a child, pursuant to section 568.060.[1] Gibson presents three points on appeal. Finding no merit to Gibson's points, we affirm the trial court's judgment and sentence.

### Factual and Procedural Background

On appeal, we view the evidence and all reasonable inferences derived therefrom in the light most favorable to the verdict; all contrary evidence and inferences are disregarded. ***State v. Bateman***, 318 S.W.3d 681, 687 (Mo. banc 2010). Viewed from this perspective, the following evidence was adduced at trial.

---

[1] All references to statutes are to RSMo. 2000, unless otherwise indicated.

In August 2012, A.G., a fifteen-year-old girl, lived in Pleasant Hope, Missouri, with her fourteen-year-old sister, E.G., her younger brother, and Gibson, her father. On the evening of August 2, 2012, Gibson was angry and yelled at A.G. and E.G. A.G. yelled back and called Gibson a "[s]tupid son of a bitch." Gibson, even angrier after A.G.'s insult, started walking toward A.G.

A.G. ran to the bathroom and locked the door because she was fearful of Gibson after prior physical confrontations with him. Gibson shouted at A.G. from the other side of the door, and punched underneath the knob until the door began cracking. Unable to break the door down, Gibson resorted to prying the door open with a spoon.

Having gained entry to the bathroom, Gibson, holding a bottle of liquid dishwashing soap, declared that A.G. would not be "cuss[ing] anymore." Physically forcing and pinning A.G. to the floor, Gibson tried to squeeze the dishwashing soap into A.G.'s mouth—however, he discovered that the soap bottle was empty, and tossed it aside in favor of a bar of soap from the shower. Gibson forced open A.G.'s mouth with his fingers, and shoved the bar of soap deep into A.G.'s mouth, injuring A.G.'s mouth and lips. Gibson held the soap in A.G.'s mouth until A.G. bit the bar of soap in half, at which time Gibson returned to the living room and sat on the couch. A.G. sat up coughing, spitting out blood and chunks of soap. Minutes later, A.G. still had chunks of soap in her mouth and teeth.

A caseworker made monthly visits to the Gibson household. During the caseworker's August 2012 visit, Gibson gave a false account of an incident that had occurred several days before the caseworker's visit. E.G. gave a countervailing account of the incident. On August 15, 2012, Gibson, having learned of E.G.'s account, chastised and yelled at E.G. calling her ungrateful, a "bitch" and a "whore," and accused her of ruining the Gibson family.

Later the same day, E.G. was using the family laptop computer in her bedroom. Gibson entered the room, demanded the computer, and yelled at E.G. that she did not deserve anything she had. Gibson then picked up E.G.'s hair straightener, which E.G. took from him. E.G., having gained possession of the hair straightener, lay on her bed and held the straightener under her bed with one hand so Gibson could not reach it. Gibson attempted to lie on top of E.G. and reach the straightener, but was unsuccessful. Instead, he grabbed the straightener's cord, which was trailing from under E.G.'s bed. With the cord of the straightener wrapped around E.G.'s neck, Gibson pulled up on the cord, choking E.G., causing her to let go of the straightener. Gibson then retrieved the straightener and broke it in half.

E.G. began to walk out of her bedroom when Gibson picked her up by the throat and choked her with his hands for fifteen-to-twenty seconds while E.G. struggled to escape. Only after E.G. successfully kicked Gibson did he release her. E.G. sustained visible red marks around her neck from being choked. Gibson also pushed E.G.'s head into the "bare [] sheetrock" and "wood" surrounding a window, which caused visible red marks on E.G.'s temple. E.G. then ran to the home of a neighbor who called the police.

Gibson was charged by a first amended felony information with the class C felony of abuse of a child as to A.G. (Count I), pursuant to section 568.060, by "knowingly inflict[ing] cruel and inhuman punishment upon Juvenile AG, a child less than seventeen years old, by making her eat soap causing her to choke[]"; and the class C Felony of abuse of a child as to E.G. (Count II), pursuant to section 568.060, by "knowingly inflict[ing] cruel and inhuman punishment upon EG, a child less than seventeen years old, by choking her with his hands."

On March 26, 2014, Gibson filed a "Motion to Compel Discovery" requesting, in part, copies of the Child Advocacy Center (CAC) video interviews of A.G. and E.G. On March 28,

3

2014, Gibson also filed a "Motion in Limine" to prevent the State from commenting on, or introducing evidence relating to any prior uncharged bad acts of Gibson; any alleged prior incidents of domestic violence; or any prior incidents of child abuse other than those specifically charged.

On April 7, 2014, a hearing was held on Gibson's motion to compel. Gibson's defense counsel argued that the CAC interview video was not included in the State's responses to discovery, and that he was entitled to a copy of the video to prepare for trial.

The State responded it had an open-file policy whereby defense counsel could come into the prosecutor's office and look at the video at any time. The State expressed concern that defense counsel could provide the video to Gibson, who could then release the video to the public, exposing juvenile victims' identities. The prosecutor admitted that while his office had in the past released copies of CAC videos to some defense attorneys, it only did so when defense counsel agreed the videos would not be released to clients. The trial court overruled Gibson's motion as to the CAC video, advising defense counsel that, "You're entitled to [the video]; it's available at the prosecutor's office, for you to view."

At the same hearing, Gibson filed an amended motion in limine, which was also heard. Defense counsel argued that the trial court should exclude uncharged bad acts of Gibson. The State argued that the evidence sought to be excluded related to "systematic and continual abuse" of the children by Gibson, and that the information was relevant to a jury to show there was a common scheme as to Gibson's actions with regard to the children. The motion in limine was overruled.

A jury trial was held on April 14, 2014. On the morning before trial, defense counsel objected to moving forward with trial because the trial court overruled Gibson's amended motion

4

in limine. Defense counsel also renewed a previous motion for continuance stating that while he was able to view the CAC video in the prosecutor's office, he was unable to make a transcription of the video or redactions to it for viewing by the jury and for impeachment purposes. The trial court denied Gibson's request for a continuance.

Following jury selection, the trial court revisited Gibson's amended motion in limine and sustained the motion as to references to abuse or mistreatment of A.G. and E.G., by two individuals other than Gibson, in the State's case-in-chief.

Gibson did not testify and did not present any evidence. At trial, A.G. testified as to "physical confrontations" between herself and Gibson occurring in late July or early August 2012. Defense counsel objected to this testimony as being uncharged misconduct, which the trial court overruled.

E.G. testified that a caseworker would come to their house monthly and she and Gibson got into a dispute because E.G. thought Gibson had lied to the caseworker. Defense counsel objected to this evidence of uncharged prior incidents of abuse, and this objection was overruled.

During defense counsel's cross-examination of A.G., defense counsel renewed his argument "from our motion to continue" because he was not provided a copy of the CAC video interviews under the motion to compel discovery, and had no way to impeach A.G. thus impinging Gibson's rights. Defense counsel renewed his motion for continuance, and requested a mistrial and new trial setting so that he could obtain the CAC video and make redactions and transcriptions in order to properly impeach A.G.

The State argued that defense counsel watched the video in the prosecutor's office, and had plenty of opportunity to prepare for trial. The trial court denied the motion for mistrial.

At the close of all the evidence, the jury found Gibson guilty on both counts of child abuse, sentencing Gibson to two concurrent terms of three years in the Missouri Department of Corrections. This appeal followed.

In three points on appeal, Gibson alleges the trial court erred in: (1) overruling his motion for judgment of acquittal and sentencing him for abuse of child because the State's evidence failed to establish beyond a reasonable doubt that Gibson knowingly inflicted cruel and inhuman punishment upon A.G. because the evidence was insufficient to prove that Gibson made A.G. "eat" soap and that the alleged conduct was cruel and inhuman punishment; (2) overruling Gibson's objections and allowing the State to introduce evidence of prior uncharged allegations of "physical confrontations" with Gibson and that the family had a caseworker who visited monthly because the uncharged misconduct had little, if any, probative value in proving the elements of child abuse and the prejudicial effect grossly outweighed any value; and (3) not requiring the State to provide copies of the CAC interview video of A.G. and E.G. to Gibson's counsel in advance of trial left defense counsel without the ability to fully prepare for trial.

The issues for our determination are:

1.      Was there sufficient evidence to support Gibson's conviction on Count I?

2.      Did the trial court abuse its discretion in overruling defense counsel's objections to testimony regarding prior physical confrontations between A.G. and Gibson, and the involvement of a caseworker at the Gibson residence?

3.      Did the trial court abuse its discretion in overruling defense counsel's motion to compel the prosecutor to provide a copy of the CAC interview video?

*Point I:  Sufficient Evidence to Support Gibson's Conviction*

**Standard of Review**

"Appellate review of a claim that there is insufficient evidence to support a conviction is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt."  *State v. Coleman*, 463 S.W.3d 353, 354 (Mo. banc 2015) (internal quotation and citation omitted).  We accept as true all of the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary.  *Id.*

**Analysis**

In his first point, Gibson's argument has two components:  (1) there was insufficient evidence to support his conviction on Count I in that the evidence did not show that Gibson made A.G. eat soap as the charging information alleged, and (2) that there was insufficient evidence that Gibson's conduct under Count I was cruel and inhuman.

*Sufficiency of Evidence:  Ingestion of Soap*

Gibson's brief argues that the State failed to show that Gibson forced AG to "eat" the soap, in that there was no evidence A.G. ingested the soap.  Assuming, without deciding, that the State was required to prove A.G. ingested the soap, Gibson's argument nevertheless fails.

Gibson largely ignores our standard of review in that we must view all evidence and inferences that may be reasonably drawn in favor of the State.  *Coleman*, 463 S.W.3d at 354. There was evidence that Gibson forced a bar of soap into A.G.'s mouth, causing her to choke. A.G. bit the bar of soap in half, and was coughing and spitting out soap and blood.  Several minutes after the incident, A.G. still had soap in her mouth and teeth.  This is sufficient evidence from which a fact-finder may reasonably infer that A.G. ingested some of the soap.  *Id.*

7

*Sufficiency of the Evidence:  Cruel and Inhuman Punishment*

Gibson argues that there was insufficient evidence to show that his conduct under Count I rose to the level of cruel or inhuman punishment.

Gibson was convicted of committing the crime of abuse of a child under section 568.060.1.  A person commits this crime if he or she "knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old."  § 568.060.1(1); *State v. Hansen*, 449 S.W.3d 781, 785 (Mo. banc 2014).

The term "cruel and inhuman punishment" is not defined by statute.  However, our courts have indicated that the phrase has "a settled common-law meaning and are words of general and common usage about which there is no great dispute as to meaning."  *Hansen*, 449 S.W.3d at 785 (internal quotation and citation omitted).  The term "punishment" has been defined as "severe, rough, or disastrous treatment." *Id.* (internal quotation and citation omitted).  "[A]n individual can commit the crime of child abuse by inflicting cruel and inhuman punishment even if the charged conduct does not cause or create a substantial risk of physical injury." *Id.*

Here, there was evidence that Gibson pinned A.G., a fifteen-year-old girl, down on the floor and forced her mouth open with his fingers.  Then Gibson shoved a bar of soap into A.G.'s mouth, thereby choking A.G.  In response, A.G. bit the bar of soap in half.  A.G. received cuts to her mouth and lips, and was coughing and spitting up blood.  As previously discussed, the fact-finder could have reasonably inferred under these facts that A.G. ingested some of the soap.

The physical force used during the encounter, the age of the respective actors, and the physical harm caused to A.G. are sufficient evidence for a fact-finder to find that Gibson's conduct rose to the level of cruel and inhuman punishment.  Point I is denied.

***Point II:  No Abuse of Discretion in Allowing Testimony Regarding
A.G. and Gibson's Prior Physical Confrontations,
and Caseworker Visits***

**Standard of Review**

Appellate review of a trial court's decision to admit or exclude evidence is reviewed for abuse of discretion.  ***State v. Ise***, 460 S.W.3d 448, 459 (Mo.App. W.D. 2015).  A trial court abuses its discretion when its decision is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to indicate a lack of careful consideration.  ***State v. Turner***, 242 S.W.3d 770, 777 (Mo.App. S.D. 2008).  "If reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." ***Id.***

Even if we find abuse of discretion, we will not reverse unless we find that the trial court's error is so prejudicial that it deprived the defendant of a fair trial.  ***State v. Howery***, 427 S.W.3d 236, 250 (Mo.App. E.D. 2014) (internal quotation and citation omitted).  "Error is not prejudicial unless there is a reasonable probability that it affected the outcome of the trial." ***Id.*** The burden is on defendant to show both error and resulting prejudice.  ***Id.***  "A trial court's ruling on the admissibility of evidence will be upheld if it is sustainable under any theory." ***State v. Mort***, 321 S.W.3d 471, 483 (Mo.App. S.D. 2010) (internal quotation and citation omitted).

**Analysis**

In his second point, Gibson argues that the trial court abused its discretion in allowing the State to present evidence that A.G. had physical confrontations with Gibson prior to the child abuse on August 2, 2012, and in allowing E.G.'s testimony that a caseworker visited Gibson's home on a monthly basis in that such evidence was uncharged prior bad acts.

"A defendant has the right to be tried only on the offense for which he is charged." ***State v. Davis***, 226 S.W.3d 167, 170 (Mo.App. W.D. 2007) (citing ***State v. Barriner***, 34 S.W.3d 139, 144 (Mo. banc 2000)). Hence, evidence of uncharged "separate and distinct crimes" cannot be used to demonstrate the defendant's propensity to commit the charged crime. ***State v. Vorhees***, 248 S.W.3d 585, 587 (Mo. banc 2008).

"[V]ague references to other uncharged crimes are insufficient to warrant reversal for trying a defendant for uncharged crimes. The defendant's association with other crimes must be clear and definite to run afoul of the general rule of inadmissibility." ***State v. Key***, 437 S.W.3d 264, 270 (Mo.App. W.D. 2014) (internal quotation and citation omitted).

Gibson argues that the trial court abused its discretion in allowing the State to present evidence that A.G. had prior physical confrontations with Gibson. Here, A.G. testified that in late June and early July 2012, there were "physical confrontations" between Gibson and herself. This testimony is vague, and it is not clear from this testimony whether the prior conduct by Gibson was criminal or even wrongful. A.G.'s testimony does not clearly and definitively associate Gibson with prior uncharged criminal conduct. Further, the testimony was isolated and brief, and the State did not rely on or reference the testimony in closing arguments. Under ***Key***, this does not rise to a "clear and definite" connection with uncharged criminal conduct.

Gibson also argues that the trial court abused its discretion in allowing E.G.'s testimony that a "caseworker" was visiting the family. There was no testimony as to what kind of caseworker visited the family, or why she visited the family. As ***Key*** indicates, the defendant's association with another uncharged crime must be "clear and definite." ***Id.*** Plainly, the complained-of testimony did not connect Gibson with misconduct.

10

The trial court did not abuse its discretion in failing to exclude the challenged testimony. Point II is denied.

### *Point III:  CAC Video*

In his third point, Gibson argues the trial court abused its discretion in overruling defense counsel's motion to compel the State to provide a copy of the CAC interview video.

**Analysis**

Our standard of review for this point is the same as our standard of review in our analysis of Point II.

Before trial, defense counsel requested discovery including, among others items, a copy of the CAC interview video.  On April 7, 2014, a week before trial, the trial court held a pretrial hearing, during which defense counsel moved to compel production of the video.  The prosecutor indicated that his office had an "open file" policy whereby defense counsel was free to view the video at the prosecutor's office "all he wants."  The prosecutor argued there were juvenile victims involved and that defense counsel could make extra copies of the video and provide it to Gibson, who could then release it to the public, thus exposing the juvenile victims' identities. The prosecutor stated that his office provided copies only to defense attorneys who would agree not to release the copies to clients.  After these arguments, the trial court overruled Gibson's motion to compel stating, "You're entitled to [the video]; it's at the prosecutor's office, for you to view."

On the morning of trial, defense counsel moved to continue on the basis that, although defense counsel had viewed the video, he could not make a transcription of it for impeachment purposes.  The trial court denied the request for continuance.

11

During cross-examination of A.G., defense counsel objected that he was not provided a copy of the video, and had no way to prepare for or impeach A.G. Defense counsel renewed his motion to continue in order to receive and review the video, and asked for a mistrial and new trial setting. The prosecutor argued that defense counsel did watch the video at his office, and had sufficient opportunity to prepare for trial. The trial court denied defense counsel's motion for mistrial.

Rule 25.03(A)(1) requires the State to provide the defendant with the names and addresses of persons the State intends to call as witnesses, as well as their "written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements[.]" Rule 25.03(A)(1). "The criminal discovery rules are designed to allow a defendant the opportunity to prepare in advance for trial and to avoid surprise." *State v. Mabry*, 285 S.W.3d 780, 787 (Mo.App. E.D. 2009). Where a discovery violation occurs, the remedy is within the discretion of the trial court. *Id.* The trial court abuses its discretion where its failure to impose a remedy for a discovery violation results in "fundamental unfairness" to the defendant. *Id.* Fundamental unfairness relates to whether there was a reasonable likelihood a timely disclosure would have affected the outcome of the trial. *Id.* at 788.

Here, Gibson fails to show that the prosecutor violated the provisions of Rule 25.03. The State disclosed the CAC video, offered defense counsel the opportunity to view the video, and defense counsel actually viewed the video. Gibson provides no authority for his assertion that the State was required to provide him a copy of the video, and we may not step into the role of advocate and perform research on Gibson's behalf. *State v. Brown*, 444 S.W.3d 484, 488 (Mo.App. W.D. 2014).

The trial court did not abuse its discretion in rejecting Gibson's pretrial motion to compel or in denying Gibson's motion for mistrial. Point III is denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - Concurs

GARY W. LYNCH, J. - Concurs