STATE of Missouri, Plaintiff–
Respondent,

v.

Kendal L. STEWART, Defendant–
Appellant.

No. SD 30307.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2011.

Craig A. Johnston, Columbia, MO, for Appellant.

Chris Koster, Atty. Gen., Terrence Messonnier, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Judge.

Kendal Stewart (Defendant) was charged by amended information in Counts I and II with stalking his ex-wife, C.P., and in Count III with violating a full order of protection issued to C.P. *See* § 565.225.2; § 455.085.8 RSMo (2000).[1] A jury convicted Defendant of one count of stalking and one count of violating the full order of protection. The court imposed a five-year sentence on each conviction and ordered the sentences to run consecutively. Defendant presents three points on appeal. In Point I, he contends the trial court committed plain error by imposing sentence on each conviction in violation of Defendant's right to be free from double jeopardy. In Points II and III, he contends the trial court committed plain error in admitting C.P.'s testimony about Defendant's prior history of abusing her and an exhibit that referred to the same conduct. Finding no merit in these points, we affirm.

We view the evidence and inferences drawn therefrom in the light most favorable to the verdict. *State v. Schleiermacher*, 924 S.W.2d 269, 272 (Mo. banc 1996). Outside the presence of the jury, the court admitted Exhibits 1–5. Exhibits 2 and 3 were certified copies of Defendant's prior felony convictions for rape and kidnapping, which were admitted to prove his persistent offender status. Exhibit 4 was a certified copy of Defendant's conviction in May 2007 for stalking. Exhibit 5 was a certified copy of Defendant's conviction in August 2008 for violating an order of protection. The State then called nine wit-

---

1. Unless otherwise specified, all references to statutes are to RSMo Cum.Supp. (2007). The amended information alleged that Counts I and II were punishable as class D felonies because Defendant had been found guilty of stalking in another case within the past five years. *See* § 565.225.4. The amended information also alleged that Count III was pun-

ishable as a class D felony because Defendant had pleaded guilty to violation of an order of protection in another case within the past five years. Finally, the amended information alleged that Defendant was a persistent offender, which permitted all of the charged offenses to be punished as class C felonies pursuant to § 558.016.7(4).

nesses, including C.P. The following is a summary of their testimony.

C.P. and Defendant got married in 1996. Around 2003, Defendant started to use drugs and became "very abusive" in their relationship. In February 2006, Defendant broke into C.P.'s house and made her sit in a chair with the claw of a hammer pressed against her skull. This went on for four hours while Defendant threatened to kill C.P. and then himself. The hammer claws left imprints in C.P.'s skin. On another occasion, Defendant heated the end of a clothes hanger with a lighter and threatened to burn C.P. in "places so no man would ever want [her] again." In June or July 2006, Defendant grabbed C.P. on the street and threatened to cut off her head. C.P. was able to break loose and run away.

In August 2006, Defendant came to C.P.'s home and beat her up "real bad." He also stomped on the backs of her legs. She went to a domestic violence shelter because she "knew [Defendant] was going to kill [her]." As a result of the injuries C.P. sustained, she "was in a wheelchair for 16 days with almost a blood clot to [her] heart." After C.P. got out of the domestic violence shelter, she stayed with her sister for about three months. Defendant constantly called and came by the house, so C.P. "just had to stay hid." On one occasion, Defendant used some barrels in the yard to barricade C.P. and her sister inside the house. The police came to the house regularly. On August 16, 2006, C.P. obtained an ex parte order of protection against Defendant from the Circuit Court of Greene County, Missouri. On October 19, 2006, C.P. obtained a full order of protection against Defendant that was effective for one year.

After a brief lull, C.P.'s contact with Defendant resumed in June 2007. Defendant began constantly driving by C.P.'s house. She returned to the domestic violence shelter because Defendant was harassing and stalking her. When C.P. and several other women left the shelter periodically to return to C.P.'s home, they saw Defendant driving up and down the street. He would park and watch C.P. An aerial view of C.P.'s home was admitted as Exhibit 102. Using the exhibit, C.P. explained to the jury where Defendant would drive and park his car. C.P. reported these incidents to police. In October 2007, C.P. obtained a one-year extension of her full order of protection.

After another brief lull, C.P.'s contact with Defendant resumed. In January 2008, C.P. awoke one morning after a snow storm. Defendant had written his name in the snow on C.P.'s car, and there were footprints everywhere. Later that month, C.P. noticed that Defendant had followed her to the laundromat. She left her clothes there and returned home. Three days later, C.P. was driving to the laundromat when "I seen this car in my mirror. It was going like a hundred miles an hour, so I knew it was him. And I knew he was going to hit me. He was just coming right at me." C.P. called the prosecutor on a cell phone and was advised to run inside the laundromat and wait there until the police arrived. There were also a number of occasions when Defendant would come to C.P.'s residence in the middle of the night and hammer on the side of the house. When C.P. would look out of her window, she would see Defendant running away and call 911. Defendant also broke into C.P.'s house and stole all of her clothing. During this time period, C.P. filed with the police at least six incident reports involving Defendant.

C.P. said all these activities had a significant emotional effect on her and that she became "petrified" of Defendant because he was "a very dangerous man." Defen-

dant's stalking scared C.P. because of all the times Defendant had beaten her up and threatened to kill her in the past. C.P. was on medication, saw a psychiatrist monthly, and had been diagnosed with battered-women's syndrome and post-traumatic depression. Defendant's conduct destroyed C.P.'s self-esteem.

Police eventually discovered Defendant's whereabouts and arrested him in March 2008. He was charged via amended information as a prior and persistent offender with two counts of felony stalking (Counts I and II) and one count of violating an order of protection (Count III). Count I alleged Defendant's harassment of C.P. between June 27, 2007 and July 12, 2007. Counts II and III alleged Defendant's harassment of C.P. between January 31, 2008 and February 27, 2008, and Defendant's violation of an order of protection during that same time frame. Defendant represented himself at the jury trial after he was allowed to discharge retained counsel. During deliberations, the jury requested and received a copy of the order of protection, including the portion where C.P. recounted Defendant's history of abuse. The jury acquitted Defendant on Count I, but he was found guilty on Counts II and III. This appeal followed. Additional facts necessary to the disposition of this appeal will be set out below as we address Defendant's three points of error. Points II and III will be addressed together because they involve alleged errors in the admission of evidence.

### Point I

In Defendant's first point, he contends the trial court committed plain error by accepting the jury's verdicts on stalking (Count II) and violation of an order of protection (Count III) in violation of Defendant's statutory and constitutional rights to be free from double jeopardy. Relying on § 556.041 RSMo (2000) and the Fifth and Fourteenth Amendments to the United States Constitution, Defendant argues that his convictions on Counts II and III constituted double jeopardy because Count III "required the jury to find that [Defendant] knowingly violated the terms and conditions of a protection order by stalking the victim by doing the same acts during the same time period as alleged in the stalking count."

Defendant concedes that he did not preserve the double jeopardy claim for appeal because he failed to raise it at trial. He requests that we review for plain error pursuant to Rule 30.20.[2] Plain error review is discretionary. *State v. Edberg*, 185 S.W.3d 290, 293 (Mo.App.2006). A defendant is not entitled to relief pursuant to the plain error rule unless he demonstrates that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result absent a correction of the error. *State v. Oplinger*, 193 S.W.3d 766, 770 (Mo.App.2006); *State v. Deckard*, 18 S.W.3d 495, 497 (Mo.App. 2000). Plain error review involves a two-step analysis. *State v. Mack*, 301 S.W.3d 90, 95 (Mo.App.2010). First, we determine whether the trial court committed evident, obvious and clear error affecting the defendant's substantial rights. *Id.* If the defendant does not get past the first step, our inquiry ends. *Id.* If we determine that a plain error occurred, however, we then must decide whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.* "A claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." *State v. Wright*, 216 S.W.3d 196, 199 (Mo.App.2007).

---

**2.** All references to rules are to Missouri Court Rules (2011).

Although the State argues that double jeopardy claims are waived if not timely asserted at trial, our Supreme Court has held that the "right to be free from double jeopardy is a constitutional right that goes to the very power of the State to bring the defendant in the court to answer the charge brought against him." *State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007). As such, a claim of double jeopardy violation "that can be determined from the face of the record is entitled to plain error review on appeal after trial." *Id.*; *see Feldhaus v. State*, 311 S.W.3d 802, 805 (Mo. banc 2010). We have such a case here, so we will undertake plain error review.

The double jeopardy clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. This clause provides two distinct protections for criminal defendants: "(a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense." *State v. Brumm*, 163 S.W.3d 51, 55 (Mo.App.2005).[3] Missouri also has codified a statutory double jeopardy protection in § 556.041 RSMo (2000), which states:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
>
> (1) One offense is included in the other, as defined in section 556.046; or

> (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
>
> (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
>
> (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

*Id.* Defendant presents two arguments to support his assertion that his convictions on Counts II and III constituted multiple punishments for the same offense.

Defendant first argues that stalking is a lesser-included offense of the crime of violating an order of protection, which implicates § 556.041(1) RSMo (2000). Because the crime of stalking by harassment and the crime of violating an order of protection have different elements, we disagree. One offense is included in another if it is "established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" § 556.046.1(1). "If each offense requires proof of a fact that the other does not, then the offenses are not lesser included offenses, notwithstanding a substantial overlap in the proof offered to establish the crimes." *State v. McTush*, 827 S.W.2d 184, 188 (Mo. banc 1992). "The application of this review is straightforward as the elements of the of-

---

**3.** When the General Assembly specifically authorizes multiple punishments under statutes which proscribe the same conduct, the trial court may sentence cumulative punishments without offending the double jeopardy clause. *State v. Elliott*, 987 S.W.2d 418, 421 (Mo.App. 1999). Because the statutes under which De-

fendant was convicted do not expressly authorize multiple punishments, recourse must be made to Missouri's general cumulative punishment statute, § 556.041 RSMo (2000). *State v. Mobley*, 267 S.W.3d 776, 779 (Mo. App.2008).

fenses are compared." *State v. Sutton*, 320 S.W.3d 729, 736 (Mo.App.2010).

The elements of the crime of stalking are set out in § 565.225. The version of § 565.225 in effect in January and February 2008 stated that "[a]ny person who purposely and repeatedly harasses or follows with the intent of harassing another person commits the crime of stalking." § 565.225.2. The term "harasses" was defined to mean that the defendant "engage in a course of conduct directed at a specific person that serves no legitimate purpose, that would cause a reasonable person to suffer substantial emotional distress, and that actually causes substantial emotional distress to that person." § 565.225.1(3).[4] As used in this statute, "substantial emotional distress" means:

> a feeling of mental anguish including any unpleasant mental reaction, such as fright or worry. The conduct giving rise to it must be such as would produce a considerable or significant amount of emotional distress in a reasonable person, something markedly greater than the level of uneasiness, nervousness, unhappiness or the like that are commonly experienced in day-to-day living.

MAI–CR 3d 319.40; *see State v. Magalif*, 131 S.W.3d 431, 435–36 (Mo.App.2004) (adopting that definition).

Insofar as relevant here, the elements of the crime of violating an order of protection are set out in § 455.085.2 RSMo (2000). This subsection states:

> When a law enforcement officer has probable cause to believe that a party, against whom a protective order has been entered and who has notice of such order entered, has committed an act of abuse in violation of such order, the officer shall arrest the offending party-

respondent whether or not the violation occurred in the presence of the arresting officer. Refusal of the victim to sign an official complaint against the violator shall not prevent an arrest under this subsection.

*Id.* Here, Defendant was charged with violating the order of protection by stalking C.P. As used in Chapter 455, "stalking" occurs "when an adult purposely and repeatedly engages in an unwanted course of conduct that causes alarm to another person when it is reasonable in that person's situation to have been alarmed by the conduct." § 455.010(10). The term "alarm" also has a special statutory definition and "means to cause fear of danger of physical harm." § 455.010(10)(a). These elements and definitions have been incorporated into the pattern jury instruction that submits the crime of violating an order of protection. *See* MAI–CR 3d 332.52.

To convict Defendant on Count II, the jurors were required to find that Defendant caused C.P. substantial emotional distress. To convict Defendant on Count III, the jurors were required to find that Defendant caused alarm to C.P., which meant that she had to be in fear of danger of physical harm. These two elements are not the same. Accordingly, the Count II crime of stalking is not a lesser-included offense of the Count III crime of violating an order of protection. *See McTush*, 827 S.W.2d at 188.

■ Defendant next argues that stalking is merely a specific instance of the general conduct of violating an order of protection, thereby triggering the application of § 556.041(3) RSMo (2000). We disagree. In our view, the legislature's decision to impose a criminal penalty for vio-

---

4. The statute was amended in 2008 to only require that the defendant know his conduct would cause a reasonable person under the

circumstances to be "frightened, intimidated, or emotionally distressed." § 565.225.1(3) RSMo Cum.Supp. (2008).

lating an order of protection is designed to promote a respect for, and a willingness to abide by, a judicial decision entered in a civil order of protection proceeding. This is readily apparent from the requirement that, to be convicted of this crime, the State must prove: (1) an order of protection was entered against the defendant that prohibited certain conduct; and (2) the defendant either had been served with the order or was aware of its existence. *See* § 455.085.2 RSMo (2000); MAI–CR 3d 332.52. Moreover, the proof requirements diverge even farther when the elements of "substantial emotional distress" in § 565.225 and "alarm" in § 455.010(10)(a) are examined. These differences are so significant that we find no double jeopardy violation here. Point I is denied.

### Points II and III

Defendant's second and third points relate to alleged errors in the admission of evidence. At trial, C.P. testified without objection about her prior physical abuse by Defendant. In addition, Exhibit 101 was admitted without objection. This exhibit consisted of 45 pages of records from C.P.'s civil order of protection case.[5] This exhibit was given to the jurors to examine during deliberations.

■ On appeal, Defendant contends the trial court committed plain error by: (1) permitting C.P. to testify about her prior physical abuse by Defendant and not declaring a mistrial *sua sponte*; (2) admitting Exhibit 101 in evidence; and (3) allowing the jurors to see Exhibit 101 without redacting other crimes mentioned therein. Defendant argues that this evidence did not directly relate to the charged offenses, and its probative value was outweighed by prejudicial effect. Defendant concedes that he did not object to this evidence at trial, so we review only for plain error.

In order to be entitled to relief, Defendant must demonstrate that the admission of this evidence so substantially affected his rights that a manifest injustice or miscarriage of justice will inexorably result unless the error is corrected. He has failed to meet that burden. In adult abuse cases, "a defendant's history of threatening or violent conduct involving the same victim can be especially probative." *State v. Andrich,* 943 S.W.2d 841, 844 (Mo.App. 1997); *see State v. Mabry,* 285 S.W.3d 780, 785–86 (Mo.App.2009). "Considered in isolation, a defendant's outward conduct may be ambiguous or entirely lawful. Only by showing that history can the state establish the justifiable inference that a defendant's charged conduct was in fact intended to engender fear on the part of the victim and that defendant knew that it was likely to do so." *Andrich,* 943 S.W.2d at 844.

Here, the State was required to prove that Defendant's actions were not an accident or a mistake, but rather that he "purposefully" stalked C.P. and "knowingly" violated the terms of the order of protection. Additionally, the State had to prove that Defendant knew his stalking of C.P. would cause her "substantial emotional dis-

---

5. This exhibit consisted of the clerk's certification page; 16 pages of docket entries; six pages of notices and returns; several copies of the ex parte order of protection, full order of protection and renewal that C.P. obtained against Defendant; a letter from C.P. asking for copies of various documents; and the petition and questionnaire filled out by C.P. when she applied for the order of protection. The petition included statements that: (1) Defendant had threatened to kill C.P.; (2) she was in constant fear of him; (3) he had kicked her legs and blackened her eye; (4) he had kept her in a chair for hours while putting the claws of a hammer on her head; (5) he had tampered with her car; and (6) he was "a violent sex offender with cases pending."

tress" and "alarm." *See* §§ 565.225, 455.010(10)(a). Defendant's history of abuse toward C.P. showed his animosity toward her, as well as his willingness to commit violence against her. Accordingly, C.P.'s testimony and Exhibit 101 were directly relevant and material to issues the jurors had to decide. The prior acts of physical abuse were logically and legally relevant to prove that Defendant's stalking was purposeful and could have caused C.P. to suffer substantial emotional distress and alarm. The probative value of this evidence outweighed any prejudicial effect upon Defendant.

This case is very similar to *Mabry*, which involved a defendant who was convicted of violating an order of protection and stalking after he aggressively confronted an ex-girlfriend on two occasions. *Mabry*, 285 S.W.3d at 783. On appeal, defendant claimed the trial court abused its discretion in admitting evidence of his prior bad acts toward the ex-girlfriend, which included four threatening letters defendant sent to the victim leading up to the two confrontations. *Id.* at 785. In *Mabry*, the eastern district of this Court held the trial court did not abuse its discretion because the evidence of the letters tended to establish that defendant's actions were knowing and purposeful and that the victim was "reasonably 'alarmed'" by his conduct. *Id.* at 786. In the case at bar, we likewise conclude that the evidence of Defendant's prior misconduct was properly admitted.

Defendant has failed to meet his burden of demonstrating that the trial court committed an evident, obvious or clear error. Therefore, our review for plain error ends. *See State v. Spry*, 252 S.W.3d 261, 266 (Mo.App.2008). Points II and III are denied.

The judgment of the trial court is affirmed.

SCOTT, C.J., and FRANCIS, J., concur.