**STATE of Missouri, Respondent,**

v.

**Charles A. SMITH, Appellant.**

**No. ED 96865.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 15, 2012.

Roxanna A. Mason, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., Timothy A. Blackwell, Attorney General's Office, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, J.

**Facts and Procedural History**

Appellant Charles A. Smith ("Smith") was found guilty of forcible rape (Count I), aggravated stalking (Count II), four counts of violation of a protective order (Counts III, IV, V, VI), and domestic assault in the second degree (Count VII). We affirm in part and reverse in part.

Viewed in the light most favorable to the verdict, the evidence at trial showed that Smith and J.K. were romantically involved. Approximately a week before Christmas 2009, J.K. told Smith that she wanted to end the relationship, but they continued to see each other. On 26 December 2009, J.K. and Smith went to dinner and both later returned to J.K.'s apartment. J.K. agreed to allow Smith to sleep on the couch, and she retired to her bedroom. According to J.K.'s testimony, Smith barged into the bedroom, lunged at her, raped her, and strangled her until she blacked out. He also threw her on the bed. When Smith later passed out, J.K. left the apartment and called the police.

The police met J.K. in an alley next to the apartment complex, and she reported the incident. The officers conducted an investigation that night which included waking Smith up and interviewing him. Sergeant Antonio Triplett did not notice any bruising on J.K.'s neck. The officers ultimately determined that no serious crime had been committed and transported Smith to his sister's house. J.K. left to stay at a friend's house.

The following morning a police detective met J.K. and noticed bruising on her neck. The detective drove J.K. to the hospital. A medical examination revealed that she had hemorrhages on the skin on her neck, a knee injury, and bruising on her arm. During a separate examination, another physician determined that her vocal chords were extremely swollen.

On 6 January 2010, J.K. obtained a full order of protection against Smith. The order of protection prohibited Smith from

having any communication with J.K. in any manner, through any medium.

On or about 17 January 2010, Smith washed J.K.'s car and left a note on the windshield. In the note, Smith stated that he noticed J.K.'s car needed to be cleaned and that he knew he was taking a huge chance by cleaning it. It stated that he "did a honible thing [to J.K.]" and asked her not to turn him in.

On or about 23 January 2010, J.K. was getting into her car which was parked in the lot near her apartment. Smith noticed her, ran up the steps near the parking lot, scrunched down in the stairway, and smiled at J.K.

On or about 25 January 2010, Smith left a handwritten letter in J.K.'s mailbox. Between 7 February and 14 February, Smith left two cards in J.K.'s mailbox. The letter and cards did not have any postage and stated that Smith was sorry for his actions against J.K.

The jury found Smith guilty of one count of aggravated stalking (Count II), four counts of violation of a protective order (Counts III–VI), and one count of domestic assault in the second degree (Count VII). The jury found Smith not guilty on the charge of forcible rape. The trial court sentenced Smith as a prior and persistent offender to seven (7) years in the department of corrections on Count II, one (1) year on Count III, one (1) year on Count VI, one (1) year on Count V, one (1) year on Count VI, and ten (10) years on Count VII. Counts III–VI were to be served concurrent to each other, but consecutive to Counts II and VII. Count II and VII were to be served consecutively. In total, Smith received eighteen (18) years in the department of corrections. Aggrieved, Smith now appeals. To avoid repetition, additional facts are provided as needed in the discussion section.

## Discussion

### I. *Double Jeopardy*

■ In Smith's first point on appeal, he argues that his convictions for violations of an order of protection (Counts III, V, and VI) and aggravated stalking for the same conduct constitute a double jeopardy violation. We agree and vacate the convictions for Counts III, V, and VI.

■ Smith requests that we review for plain error pursuant to Rule 30.20. Plain error review is discretionary. *State v. Edberg*, 185 S.W.3d 290, 293 (Mo.App. S.D. 2006). A defendant is not entitled to relief pursuant to the plain error rule unless he demonstrates that the error so substantially affected the defendant's rights that a manifest injustice or a miscarriage of justice would inexorably result absent a correction of the error. *State v. Stewart*, 343 S.W.3d 373, 376 (Mo.App. S.D.2011). Plain error review involves a two-step analysis. *Id.* First, we determine whether the trial court committed evident, obvious and clear error affecting the defendant's substantial rights. *Id.* If the defendant does not get past the first step, our inquiry ends. *Id.* If we determine that a plain error occurred, however, we then must decide whether the error actually resulted in manifest injustice or a miscarriage of justice. *Id.*

■ The "right to be free from double jeopardy is a constitutional right that goes to the very power of the State to bring the defendant in the court to answer the charge brought against him." *State v. Neher*, 213 S.W.3d 44, 48 (Mo. banc 2007). As such, a claim of a double jeopardy violation "that can be determined from the face of the record is entitled to plain error review on appeal after trial." *Id.* Because Smith's claim can be reviewed from the

face of the record, plain error review is appropriate here.

The double jeopardy clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. amend. V. This clause provides two distinct protections for criminal defendants: "(a) protection from successive prosecutions for the same offense after either an acquittal or a conviction and (b) protection from multiple punishments for the same offense." *Stewart*, 343 S.W.3d at 377.

Missouri also has codified a statutory double jeopardy protection. In relevant part, it provides that "when the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if ... [o]ne offense is included in the other." § 556.041. An offense is included when "it is established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 556.046. An offense is a lesser included offense if it is impossible to commit the greater without necessarily committing the lesser. *State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002).

In considering whether one offense is included in another, our courts apply the "same elements" test established in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and codified at §§ 556.041 and 556.046.1(1). *State v. Burns*, 877 S.W.2d 111, 112 (Mo. banc 1994).

"[W]e simply determine the elements of the offenses at issue and compare them. If this comparison establishes that they do not each have an element that the other offense lacks, the guarantee against double jeopardy bars the prosecution of the second offense. If both offenses have elements that the other lacks, the guarantee does not bar the subsequent prosecution."

*State v. Reando*, 313 S.W.3d 734, 738 (Mo. App. W.D.2010). "[O]nly the statutory elements of the offenses are relevant, not the evidence adduced at trial." *Id.* The statutory elements of aggravated stalking are set out § 565.225.2. In relevant part, a person commits the crime of aggravated stalking "if he or she purposely, through his or her course of conduct, harasses or follows with the intent of harassing another person, and ... at least one of the acts constituting the course of conduct is in violation of an order of protection and the person has received actual notice of such order." *Id.* (emphasis added). "Course of conduct" is defined as a "pattern of conduct composed of two or more acts, which may include communication by any means, over a period of time, however short, evidencing a community of purpose." § 565.225.1(1).

The statutory elements of violating an order of protection are set out in § 455.085.2. In relevant part, a person commits the crime of violating an order of protection where "a party, against whom a protective order has been entered and who has notice of such order entered, has committed an act of abuse in violation of such order." *Id.*

From this side-by-side comparison, it is apparent that the offense of violation of a protective order is included in the offense of aggravated stalking because proof of the same conduct is required to sustain both convictions. Moreover, it is impossible to commit aggravated stalking without violating the order of protection. Therefore, Smith is correct that his convictions for Counts III, V, and VI contemporaneous with the aggravated stalking conviction violated his constitutional right to be free

from double jeopardy as they were submitted to the jury on the same facts.

Based on the foregoing, the trial court committed plain error in accepting the jury's verdicts. We affirm Smith's conviction for aggravated stalking, but vacate the convictions on Counts III, V, and VI.

## II. *Jury Instruction on Count IV*

 In Smith's second point on appeal, he argues that the trial court erred by significantly deviating from MAI–CR3d 332.52 when instructing the jury on Count IV. Trial counsel failed to object to the instruction on Count IV so we review for plain error. The plain error standard of review for instructional error is a two-step process:

> The first step involves an examination to determine whether the claim for review facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted, or in other words, whether on the face of the claim, plain error has, in fact, occurred ... Plain errors are those which are evident, obvious and clear. If plain error is found on the face of the claim, then the rule authorizes, as a matter of court discretion, a second step to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.

> Instructional error seldom rises to the level of plain error. To show that the trial court plainly erred in submitting a jury instruction, a defendant must go beyond a demonstration of mere prejudice. In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict, and cause[d] manifest injustice or miscarriage of justice. The defendant bears

the burden of showing that plain error has occurred which resulted in manifest injustice or a miscarriage of justice.

*State v. Beck,* 167 S.W.3d 767, 778–79 (Mo. App. W.D.2005) (internal citations omitted).

"Whenever there is an MAI–CR instruction ... applicable under the law and Notes on Use, the MAI–CR instruction ... shall be given or used to the exclusion of any other instruction. Mo. R.Crim. P. 28.02(c). MAI–CR3d 332.52 covering violation of an order of protection was applicable. In relevant part, the model instruction reads:

> Third, that (on) (on or about) *[date ]* in the (City) (County) of ..........,

>> State of Missouri, the defendant knowingly violated the terms and conditions of that order by *[ Insert one of the following. Omit brackets and number.]*

> █ stalking *[name of victim ]* by *[Describe conduct constitutes violation.]*,

> █ abusing *[name of victim ]* by (assaulting) (battering) (coercing) (harassing) (sexually assaulting) (unlawfully imprisoning) ( *[Describe other conduct that constitutes abuse.]* ),

> █ entering the premises at *[Insert location ]*,

> █ initiating communication with *[name ]*, by *[Describe conduct that constitutes violation.]*,

> then you will find the defendant guilty (under Count ...) of violation of order of protection.

However, the actual instruction given at trial as to Count IV did not specifically track the language of the model instruction. In relevant part, the actual instruction read:

Third, that between January 23, 2010 and January 24, 2010 in the City of St. Louis, State of Missouri, the Defendant knowingly violated the terms and conditions of that order by disturbing the peace of J.K. by showing up near her home, then you will find the Defendant guilty under Count 4 of violation of an adult abuse order.

The language "disturbing the peace of J.K. by showing up near her home" is not one of the types of conduct provided in the model instruction, and indeed this conduct was not charged. The State was thus able to obtain a conviction based upon conduct that would not constitute a violation of the order of protection. Giving this instruction amounted to plain error that resulted in manifest injustice. Therefore, the conviction for Count IV is vacated.

### III. *Request for Mistrial*

In Smith's final point of appeal, he argues that the trial court erred in denying his request for a mistrial when J.K. testified that Smith had slapped her on a previous occasion. We disagree.

"The trial court has discretion to grant a mistrial, which is a drastic remedy and should be employed only in the most extraordinary circumstances." *State v. Taylor*, 298 S.W.3d 482, 512 (Mo. banc 2009). "Because the trial court is in a better position to evaluate the prejudicial effects of the challenged behavior, our review is limited to whether, as a matter of law, the trial court abused its discretion in refusing to grant a mistrial." *State v. Bowler*, 892 S.W.2d 717, 719 (Mo.App. E.D.1994). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances, and it is so arbitrary or unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Norris*, 237 S.W.3d 640, 643 (Mo.App. S.D.2007). We

review for prejudice as well as error. *State v. McElvain*, 228 S.W.3d 592, 596 (Mo.App. W.D.2007). An error is prejudicial if but for the error there is reasonable probability that the outcome of the trial would have been different. *Id.*

At trial, during the redirect examination of J.K., the following exchange occurred:

STATE: And—why did you decide to break up with the Defendant or end the relationship in December of 2009?

J.K.: We argued all the time. He was always accusing me of having affairs with everybody. One time he slapped me—

DEFENSE: Objection, Your Honor.

THE COURT: Sustained.

Defense counsel later asked for a mistrial based on J.K.'s statement. The trial court denied this request, but did instruct the jury to disregard J.K.'s statement.

There is no dispute that that J.K.'s statement constituted inadmissible evidence of a prior bad act. *State v. Primm*, 347 S.W.3d 66, 70 (Mo. banc 2011) ("It is a well-established general rule that proof of the commission of separate and distinct crimes is not admissible unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial"). Nonetheless, we cannot say the trial court abused its discretion in handling the statement. The trial court sustained defense counsel's objection and instructed the jury to disregard the statement. As mistrial is only to be granted in "extraordinary circumstances," the instruction was the appropriate remedy. *Taylor*, 298 S.W.3d at 512. Furthermore, given the remainder of the evidence presented at trial establishing Smith's guilt, we cannot say that this isolated statement affected the outcome of the trial. The point is denied.

Based on the foregoing, the convictions on Counts III, IV, V, and VI are vacated, and Smith is discharged from Counts III, IV, V, and VI. The convictions on Counts II and VII are affirmed.

KATHIANNE KNAUP CRANE, P.J. and LAWRENCE E. MOONEY, J., concur.