

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | WD81806 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | March 26, 2019 |
| SALVADOR TOLENTINO-GERONIMO, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri
The Honorable Robert L. Koffman, Judge**

**Before Division Four:** Karen King Mitchell, Chief Judge, and
Mark D. Pfeiffer and Thomas N. Chapman, Judges

Salvador Tolentino-Geronimo appeals the denial of his motion for new trial following his conviction for first-degree rape of Victim, who was eleven years old when the crime occurred. Tolentino-Geronimo claims the trial court plainly erred by failing to make a written finding on the record that Victim, who was fifteen years old at the time of trial, was a "child" before administering a "non-traditional oath"[1] under the Child Witness Protection Act, § 491.725.[2] Finding no error, plain or otherwise, we affirm.

---

[1] Tolentino-Geronimo uses the term "non-traditional oath" to describe the oath the trial court administered to Victim in this case. For consistency, we will use the same terminology throughout this opinion.

[2] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2014 Supplement.

## Background

In June 2017, Victim's friend contacted Detective Mark Morgan with the Pettis County Sheriff's Office and provided information that prompted Detective Morgan to set up an interview for Victim at Child Safe, a child advocacy center. During the Child Safe interview, Victim disclosed that Tolentino-Geronimo had raped her. Following an investigation, Tolentino-Geronimo was charged with rape in the first degree (victim less than twelve years of age) pursuant to § 566.030.

The case proceeded to a jury trial. Before Victim testified, the trial court engaged in the following discussion with her:

THE COURT: Could you tell me how old you are.

THE WITNESS: I'm 15.

THE COURT: And tell me your name.

THE WITNESS: [B.A.].

THE COURT: Say that again.

THE WITNESS: [B.A.].

THE COURT: Miss [A.], have you ever been in a courtroom before?

THE WITNESS: No, I have not.

THE COURT: Do you know the difference between telling the truth and not telling the truth?

THE WITNESS: Yes, I do.

THE COURT: If I were to say I was wearing a red robe instead of a black one, would I be telling the truth?

THE WITNESS: No, sir.

THE COURT: Now, do you understand that if you go into a courtroom and say you're going to tell the truth and then don't, you could get into some serious trouble? Do you understand that?

THE WITNESS: Yes, sir.

THE COURT: Will you tell the truth here today?

THE WITNESS: Yes, sir.

No further oath was administered to Victim, and Tolentino-Geronimo did not object to the oath or to the process followed by the trial court in administering the oath.[3] Victim then proceeded to testify and was cross-examined by Tolentino-Geronimo's counsel.

Victim testified that, one afternoon near the end of fifth grade, she visited the home of Tolentino-Geronimo and his wife. Victim was in the main bedroom watching television with Tolentino-Geronimo and his infant son, when Wife said she was going to take a shower. After Wife went to shower, Tolentino-Geronimo began touching Victim's chest "inappropriately." He then held Victim down, pulled her pants down, pulled his pants down, and put his penis in her vagina, but it was painful and "difficult to go in." Victim testified that she was uncomfortable and she believed Tolentino-Geronimo saw her discomfort, so he stopped; Victim then pulled up her pants and ran from the house. Victim told Wife about the rape in a text message, and Wife offered to take Victim for a rape examination, but Victim refused, causing Wife to conclude that Victim was lying. Because Wife did not believe her, Victim did not tell her parents or anyone else about the rape, fearing that no one would believe her. Victim also acknowledged that she had stolen money from Tolentino-Geronimo around the time of the rape, but she insisted that the money had nothing to do with her allegation.

---

[3] Tolentino-Geronimo claims that he did not object at trial because he was unaware at that time that the trial court had not made a written finding on the record that Victim was a "child" for purposes of administering a non-traditional oath.

The jury found Tolentino-Geronimo guilty of first-degree rape. Tolentino-Geronimo timely filed a motion for new trial, asserting for the first time that the trial court erred in failing to properly administer an oath to Victim before she testified. The trial court denied the motion and sentenced Tolentino-Geronimo to life without parole.

## Standard of Review

"To properly preserve an issue for an appeal, a timely objection must be made during trial." *State v. Adkison*, 517 S.W.3d 645, 651 (Mo. App. W.D. 2017) (quoting *State v. Driskill*, 459 S.W.3d 412, 425 (Mo. banc 2015)). "The objection at trial must be specific and made contemporaneously with the purported error." *Id.* (quoting *Driskill*, 459 S.W.3d at 426). "Raising an issue for the first time in a motion for new trial, when an objection could have been made at trial, is insufficient to preserve the claimed error for appellate review." *Id.* (quoting *State v. Barker*, 410 S.W.3d 225, 234 (Mo. App. W.D. 2013)). Tolentino-Geronimo concedes that he did not object at trial to the oath administered to Victim before her testimony. Instead, he raised the issue for the first time in his motion for new trial. Thus, Tolentino-Geronimo requests plain error review.

Rule 30.20[4] allows unpreserved claims to be reviewed for plain error at the discretion of the court. "Plain error review involves a two-step process." *State v. Stewart*, 343 S.W.3d 373, 376 (Mo. App. S.D. 2011).

> First, we determine whether the trial court committed evident, obvious and clear error affecting the defendant's substantial rights. If the defendant does not get past the first step, our inquiry ends. If we determine that a plain error occurred, however, we then must decide whether the error actually resulted in manifest injustice or a miscarriage of justice.

*Id.* (internal citations omitted). "Plain error can . . . serve as the basis for granting a new trial [only] if the error was outcome determinative." *State v. Holmes*, 491 S.W.3d 214, 219 (Mo. App. W.D.

---

[4] All Rule references are to the Missouri Supreme Court Rules (2018) unless otherwise noted.

2016) (quoting *State v. White*, 466 S.W.3d 682, 686 (Mo. App. E.D. 2015)). As the defendant, Tolentino-Geronimo bears the burden of showing that the trial court's alleged error resulted in manifest injustice. *Id.*

**Analysis**

In his only point on appeal, Tolentino-Geronimo asserts that the trial court plainly erred by failing to make a written finding on the record that Victim, who was fifteen years old at the time of trial, was a "child" before administering a non-traditional oath under the Child Witness Protection Act, § 491.725. Stated differently, Tolentino-Geronimo claims that the trial court plainly erred in failing to administer a traditional oath to Victim. We disagree.

Section 491.380.2 requires "[e]very person offered as a witness, before any testimony shall be given by [her, to be] duly sworn, or affirmed, that the evidence [s]he shall give relating to the matter in issue . . . shall be the truth, the whole truth, and nothing but the truth." But, "no special litany [is] required in administering an oath." *Kovacs v. Kovacs*, 869 S.W.2d 789, 792 (Mo. App. W.D. 1994). Under § 492.060, "[i]n all cases in which an oath or affirmation is required or authorized by law, every person swearing, affirming or declaring, *in whatever form*, shall be deemed to have been lawfully sworn. . . ." (Emphasis added.) Likewise, § 492.040 provides, in pertinent part,

> Whenever the court . . . shall be satisfied that [a] person [to be sworn] has any peculiar mode of swearing connected with or in addition to the usual form of administering oaths, which is to [her] of more solemn and binding obligation, the court . . . shall adopt that mode which shall appear to be most binding on the conscience of the person to be sworn.

In other words, it is the substance of the oath or affirmation rather than the form that matters. "The important feature, regardless of the form of oath, is its quickening of the conscience of the witness

5

and the liability it creates for the penalty of perjury." *Kovacs*, 869 S.W.2d at 792 (quoting *State v. Bowlin*, 850 S.W.2d 116, 117 (Mo. App. S.D. 1993)).

Here, the trial court specifically asked Victim if she knew the difference between telling the truth and not telling the truth, and she responded that she did. The court used an example to ensure that Victim, in fact, understood what it meant to tell the truth. The court next asked Victim whether she understood that she could "get into some serious trouble" if she went into a courtroom and said she would tell the truth but then did not, and again she responded that she understood. The court then asked Victim if her testimony would be truthful; she replied that it would. This exchange on the record demonstrates that the trial court properly called Victim's attention to both the need to tell the truth and the consequences of failing to do so. In response, Victim declared that she would tell the truth. Accordingly, Victim was lawfully sworn in accordance with § 492.060 before she testified. *See Kovacs*, 869 S.W.2d at 792 (rejecting father's plain error argument regarding the consideration of his fourteen-year-old daughter's testimony, which was received in chambers and without having her sworn or taking an affirmation, where the judge emphasized the importance of telling the truth, and the daughter said she understood).[5]

Tolentino-Geronimo bases his appeal on § 491.725, the Child Witness Protection Act, which Missouri enacted to "facilitate testimony that is fair and accurate, for the benefit of all parties, and in order to protect all parties from the risks of a child becoming confused while testifying in a judicial proceeding." § 491.725.3. The Act defines "child" as "a person fourteen years of age or under, or at the discretion of the court, a person fifteen to seventeen years of age,

---

[5] We are aware that in *State v. Ward*, 242 S.W.3d 698, 704 (Mo. banc 2008), the Court held that an adult defendant's statement that he would tell the truth if allowed to testify was insufficient to quicken his conscience where he otherwise refused to take an oath or make an affirmation. We find *Ward* distinguishable because it involved a mere statement, by itself, that the witness would tell the truth on the stand. *Id.* In the present case, the trial court elicited Victim's declaration that she would tell the truth after calling her attention to the consequences of not telling the truth on the stand. Under the facts of this case, Victim's declaration was sufficient to constitute a valid oath because it showed a quickening of her conscience.

who is . . . the alleged victim . . . in any judicial proceeding under chapter . . . 566." § 491.725.2(1). When applying the Act, "[t]he court shall make written findings on the record when a child fifteen to seventeen years of age is included under this [definition]." *Id*. Relevant to the present case, the Act requires the judge "to ensure that any oath that is required of a child shall be administered in such a manner that the child may fully understand his or her duty to tell the truth." § 491.725.3(1).[6] Thus, Tolentino-Geronimo argues, that before the trial court could administer the non-traditional oath to Victim, the court was required to make a finding on the record that Victim was a "child," and the court's failure to make that finding constitutes plain error. In other words, Tolentino-Geronimo claims that the trial court plainly erred by failing to administer a traditional oath to Victim because the court did not find her to be a "child" pursuant to § 491.725. We disagree.

Section 491.725.2(1) grants the trial court discretion to consider a fifteen-year-old witness to be a "child" for purposes of the Act, but there is no indication in the record that the trial court intended to exercise that discretion in this case. And the fact that § 491.725.3(1) requires courts to administer age-appropriate oaths to children who are subject to the Act does not mean that courts are prohibited from using similar age-appropriate oaths for other witnesses. Section 491.725 says nothing about witnesses who are not subject to that statute.

Sections 492.060 and 492.040 allow trial courts to administer oaths in whatever form the courts find to be most binding on the conscience of the person being sworn, without regard to the witness's age. That is precisely what the trial court did in this case. There is nothing in § 491.725.2(1) to indicate that the legislature intended to supplant the flexibility afforded by §§ 492.060 and 492.040 with respect to witnesses fifteen-to-seventeen years of age. To the contrary, § 491.725.2(1) grants the trial court discretion to proceed under that section with respect

_____

[6] The Act affords several additional protections for child witnesses but those protections are not relevant to this case.

7

to such witnesses, but only after the court makes the required finding on the record.  Here the trial court chose a different path, and that path is authorized by §§ 492.060 and 492.040.  And § 491.725's requirements for the child witnesses within its purview do not negate the trial court's general ability to administer an oath best suited to quicken the witness's conscience.

Because the trial court did not commit "evident, obvious and clear error affecting [Tolentino-Geronimo's] substantial rights[,] . . . our inquiry ends."  *Stewart*, 343 S.W.3d at 376.  As such, Point I is denied.

### Conclusion

Because the trial court did not err in denying Tolentino-Geronimo's motion for new trial, its decision is affirmed.

_____
Karen King Mitchell, Chief Judge

Mark D. Pfeiffer and Thomas N. Chapman, Judges, concur.